IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTT A. SAMFORD, JR., § | | |
| TDCJ #835644, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-06-0279 | |
| § | | |
| ASSISTANT WARDEN C.S. § | | |
| STAPLES, *et al.*, § | | |
|     Defendants. § | | |

**<u>MEMORANDUM AND ORDER</u>**

State inmate Scott A. Samford, Jr., has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights. He proceeds *pro se* and *in forma pauperis*. At the Court's request, Samford has filed a more definite statement of his claims. (Doc. #7). The Court has also considered an amended version of the complaint filed by Samford (Doc. #4) along with numerous exhibits submitted by him in this case. After reviewing all of the pleadings as required by 28 U.S.C. § 1915A(a), the Court concludes that this case must be **dismissed** for reasons that follow.

**I.    BACKGROUND**

Samford is presently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"), at the Clements Unit in Amarillo. He sues the following TDCJ employees assigned to the Pack I Unit in Navasota, where Samford was formerly assigned: Assistant Warden C.S. Staples; Lieutenant K. Pittman; Officer Rodney Backhus; Officer Shelia Torres; Senior Warden Merchant; and Sergeant

Stevens. Samford also sues former TDCJ Director Doug Dretke.

According to the complaint and more definite statement, Samford complains that a female officer, Lieutenant Pittman, ordered him to submit to a strip search in the main hallway outside the prison unit law library on December 7, 2005. When Samford refused to submit to the search as directed, he was charged with violating prison disciplinary rules by refusing an order. Subsequently, a male official, Officer Rodney Backhus, escorted Samford to a solitary confinement cell and conducted the strip search "in private." (Doc. #7, *More Definite Statement*, at ¶ 4(d)). Samford complains that Lieutenant Pittman ordered the strip search in retaliation for a prior lawsuit filed by Samford against Officer Shelia Torres. *See Samford v. Dretke, et al.*, Civil Action No. H-05-2003 (S.D. Tex.). (Doc. #7, *More Definite Statement*, at ¶ 5(b)). Samford argues, therefore, that he was subjected to the strip search in retaliation for exercising his First Amendment right of access to the courts.

In addition, Samford complains that he was wrongly convicted of disciplinary charges in case #20060098554 on or about December 9, 2005, for refusing Lieutenant Pittman's order to submit to the aforementioned strip search in a public hallway. As punishment for that disciplinary conviction, Samford reportedly spent 15 days in solitary confinement, he lost recreational and commissary privileges for 45 days, he was assigned 42 hours of extra duty, and he forfeited 5 days of good-time credit. Samford argues that conducting such a search at that location, where female officers were present, would have been a violation of the Fourth Amendment and that his refusal to obey the order was justified. Samford contends that he was prevented from presenting evidence that the search, as ordered, was

wrongful.

Samford also claims that he was wrongly convicted of disciplinary charges on or about December 9, 2005, in case #20060102255, for attempting to establish an inappropriate relationship Officer Torres.  As punishment for this disciplinary case, Samford reportedly spent 17 days in solitary confinement, he lost recreational and commissary privileges for 45 days, he was assigned 42 hours of extra duty, he was reduced in class status from S4 to L1, and he forfeited 5 days of good-time credit.  Samford claims that the charges were unwarranted because that Officer Torres was the one who attempted to establish an inappropriate relationship with him.  According to Samford, Officer Torres made his life miserable with "on again, off again sweetness," making him think that she would be "mine someday," and then abusing her authority depending on her "moods."  Samford faults Sergeant Stevens for filing the false disciplinary charges against him in case #20060102255.

In addition to his retaliation claim, Samford contends that both of the above-referenced disciplinary convictions were entered in violation of his right to due process.  He seeks compensatory and punitive damages for his "humiliation, embarrassment, heartache, distress, and depression."  The Court concludes, however, that this case must be dismissed for reasons discussed below.

## II.    STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA").  Because the plaintiff is a prisoner who proceeds *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of the complaint and, if appropriate,

3

dismiss the case at any time if the court determines that the complaint "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) and 28 U.S.C. § 1915A(b). In conducting that analysis, a prisoner's *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A review for failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002). Under that standard, courts must assume that the plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See id*. (citations omitted).

### III.   DISCUSSION

### A. Exhaustion

The pleadings presented by Samford fail to state a claim upon which relief can be granted because the plaintiff failed to exhaust administrative remedies as required by the PLRA before filing suit in federal court. Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law." The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).

TDCJ has a formal two-step administrative grievance process. *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). Samford concedes in his more definite statement that he failed to exhaust administrative remedies before filing this suit by completing the two-step grievance process in place at TDCJ. (Doc. #7, *More Definite Statement*, at ¶¶ 4(e), 5(e)). In that respect, Samford reports that he filed a Step 1 grievance regarding his allegations, but he admits that he did not complete Step 2 of this process before filing suit in federal court. (*See id.*). Significantly, exhibits submitted by Samford show that the Step 1 grievance filed

by him was returned by prison officials without a response because it was filed in violation of procedural rules. (Doc. #15, Exhibit, Step 1 Grievance #2006029977).[1] This is not sufficient to satisfy the exhaustion requirement found in § 1997e(a).

In a recent decision, the Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, — U.S. —, 126 S. Ct. 2378, 2387 (2006), which demands compliance with prison procedural rules. Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *See id.*, 126 S. Ct. at 2389-90. By failing to compete the two-step TDCJ grievance process in compliance with prison procedures, Samford failed to properly exhaust his administrative remedies before filing suit.

In pleadings filed subsequent to the complaint and more definite statement, Samford insists that he has exhausted the grievance process since filing the original complaint in this case. The exhibits attached to Samford's pleadings suggest to the contrary. Even assuming that Samford has since completed the grievance process, this is not sufficient to satisfy the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion *before* filing suit. The Fifth Circuit has acknowledged as much, stating that complete exhaustion

---

[1] Of the many grievances submitted by Samford to the Court as exhibits, Grievance #2006059977 appears to be the only one that addresses the allegations of retaliation by named defendants. (Doc. #15, Exhibit). Of those defendants, only Lieutenant Pittman, Officer Backhus, and Assistant Warden Staples are named. No mention is made in that grievance of the other defendants in this case.

after a lawsuit is filed is not sufficient to satisfy the statutory requirements of § 1997e(a). *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient"), *cert. denied*, 526 U.S. 1133 (1999). The consensus among the other circuit courts is, likewise, that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies *after* the filing of the complaint in federal court. *See, e.g., Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003) (collecting cases from the First, Second, Seventh, Ninth, and D.C. Circuits, and holding that "the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred").

Because it is evident from the pleadings that Samford failed to properly exhaust his administrative remedies before filing suit in federal court, his complaint is subject to dismissal for lack of compliance with § 1997e(a). Alternatively, the Court concludes that Samford's claims fail for other reasons discussed further below.

    **B.    Samford's Claim for Damages**

Samford seeks damages in this case for emotional injuries. In particular, Samford seeks compensatory and punitive damages for his "humiliation, embarrassment, heartache, distress, and depression." When asked what harm he suffered as a result of the incidents alleged in the complaint, Samford responded that he "cried over Ms. Torres" and felt a sense of loss over her alleged betrayal. (Doc. #7, *More Definite Statement*, at ¶ 7). Samford adds that he has experienced "mixed emotions," "anger," and confusion about Officer Torres' treatment. (*See id.*). Because of Officer Torres' behavior, Samford alleges that he now feels

7

hurt and "confused about trusting women." (*See id*.).

The Fifth Circuit has recently held that compensatory damages are barred by 42 U.S.C. § 1997e(e) in a case such as this one where there is no showing of any physical injury.[2]  *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005) ("To the extent [that the prisoner] seeks compensation for injuries alleged to have resulted from a First Amendment violation, the district court properly determined that his claim is barred by the physical injury requirement of § 1997e(e)."). Absent an allegation that Samford suffered any physical injury as the result of a constitutional violation, his claim for compensatory and punitive damages lacks an arguable basis in law and is subject to dismissal for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2)(B); *Geiger*, 404 F.3d at 374.

To the extent that Samford's claim for punitive damages is also premised on mental or emotional distress, he has not alleged facts showing that the conduct by Officer Torres or any other defendant was so egregious or reprehensible as to warrant punitive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *BMW of North Amer. Inc. v. Gore*, 517 U.S. 559, 575 (1996). Moreover, to the extent that he allegedly suffered emotional anguish as the result of a constitutional violation, Samford's claim for punitive damages also appears barred by the PLRA.  *See Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998) (holding that compensatory and punitive damages for violations

---

[2]     42 U.S.C. § 1997e(e) provides as follows: "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

8

of the constitutional right to privacy are barred by the PLRA); *but see Allah v. Al-Hafeez*, 226 F.3d 247, 253 (3d Cir. 2000) (distinguishing between punitive damages sought for a constitutional violation itself, and punitive damages sought to compensate for mental or emotional suffering of the type barred by § 1997e(e)). For reasons discussed in more detail below, Samford further fails to establish a constitutional violation in this case.

### C.     Retaliation

Samford complains that the strip search was ordered illegally in retaliation for exercising his right of access to the courts protected by the First Amendment.[3] In particular, Samford claims that Lieutenant Pittman ordered the strip search in retaliation for a lawsuit filed by Samford against Officer Torres in *Samford v. Dretke*, No. H-05-2003 (S.D. Tex.). Samford insists that, but for his action of filing the lawsuit in Civil Action No. H-05-2003, the strip search would not have been ordered. (Doc. #7, *More Definite Statement*, at ¶ 5(b)).

Claims of retaliation generally flow from protections provided by the First

---

[3] With respect to any potential Fourth Amendment claim, inmates do not have a right to be free from strip searches, which can be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner. *Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979). Samford, who concedes that the search was performed by a male correctional officer in the privacy of a solitary confinement cell isolated from public view, does not allege facts showing that the actual search violated the Fourth Amendment. *See, e.g., Moore v. Carwell*, 168 F.3d 234, 236-37 (5th Cir. 1999) (holding that a strip search of a male prisoner by a female officer in the absence of emergency circumstances constitutes a claim that "could entitle [plaintiff] to relief for a Fourth Amendment violation"). Instead, Samford objects that the search ordered by a female officer (Lieutenant Pittman) in a public hallway, to which he refused to submit, would have violated the Fourth Amendment. Samford contends, therefore, that his disciplinary conviction for refusing to obey Lieutenant Pittman's order violated due process. For reasons explained further below, however, Samford cannot make a due process claim in this instance.

Amendment. A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining through proper channels about a guard's misconduct. *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Prison officials have wide latitude in the control and discipline of inmates, but that "latitude does not encompass conduct that infringes on an inmate's substantive constitutional rights." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (citation omitted). Nevertheless, as the Fifth Circuit has emphasized, claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions. *See id*. Thus, an inmate must demonstrate more than his personal belief that he is the victim of retaliation. *See Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Id*.; *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). As discussed below, Samford's allegations fail to satisfy the required elements for a valid retaliation claim.

### 1.     A Specific Constitutional Right

In this instance, Samford alleges that the defendants retaliated against him because he exercised his First Amendment right of access to the courts by filing a lawsuit against Officer Torres in Civil Action H-05-2003. While it is true that prisoners have a right of access to the courts that is protected by the First Amendment, it is well established that this

10

right is not unlimited.  *See Jones*, 188 F.3d at 325 (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997)).  The right of access to courts affords prisoners with only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.  *See Jones*, 188 F.3d at 325 (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  Thus, neither frivolous filings nor secondary litigation activity by a prisoner can form the basis of a retaliation claim.  *See Johnson*, 110 F.3d at 311.

Court records show that the civil action filed by Samford against Officer Torres in Civil Action No. H-05-2003 has been dismissed as frivolous and for failure to state a claim. Absent a showing that Samford's claims were legitimate, he fails to show that he had a constitutionally protected right to engage in that activity.  *See Johnson*, 110 F.3d at 310-11. If an inmate is unable to establish that a specific constitutional right that has been violated, his retaliation claim will fail.  *See Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004) (citing *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996)) (dismissing an inmate's retaliation claim for failure to demonstrate the violation of a constitutional right under the First Amendment).  Because Samford fails to satisfy the first element by alleging the violation of a specific constitutional right, he fails to state a valid retaliation claim.

    **2.**    **Retaliatory Intent**

In addition, Samford also fails to satisfy the second element of retaliatory intent.  To demonstrate retaliatory intent, a prisoner "must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly

be inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks omitted). In this instance, the strip search was ordered by Officer Pittman. Officer Pittman is not one of the defendants named in the lawsuit filed by Samford in Civil Action No. H-05-2003, and Samford does not otherwise articulate facts showing that Lieutenant Pittman had any other reason to retaliate against him for exercising his right of access to the courts. Nor does he provide a chronology of events from which retaliation may be plausibly inferred on Lieutenant Pittman's part. Samford's personal belief that Lieutenant Pittman ordered the strip search in retaliation is not sufficient. *See Johnson*, 110 F.3d at 310. In other words, Samford does not allege facts that are sufficient to satisfy the second element of a retaliation claim by showing that the officer who ordered the strip search did so with intent to retaliate.

       3.     **Causation**

Samford also fails to demonstrate the required element of causation because he does not allege or otherwise show that, but for the lawsuit against Officer Torres, he would not have been searched. According to his more definite statement, Samford states that officials ordered the search after he was discovered leaving the law library with concealed commissary items on his person, including "candy and coffee in an envelope" and a tube of deodorant that was hidden "in [his] sock." (Doc. #7, *More Definite Statement*, at ¶ 4(c)). Exhibits presented by Samford show that he was apprehended in possession of these commissary items as he left the law library, that his possession of these items was unauthorized, and that he was convicted of a disciplinary offense in connection with this incident for possession of contraband. (Doc. #19, Exhibits, *TDCJ Disciplinary Report and*

12

*Hearing Record*, disciplinary case #20060099600; Step 2 Grievance #2006065061) (affirming the disciplinary conviction in case #20060099600). Because his allegations fail to satisfy the requisite elements, Samford fails to articulate a valid retaliation claim.

**D.     Due Process**

Samford complains that, as a result of the defendants' actions, he was convicted of two prison disciplinary violations without due process. As referenced above, Samford was convicted of violating prison disciplinary rules in case #20060098554 by refusing to obey an order given by Lieutenant Pittman to submit to a strip search. (Doc. #15, *TDCJ Disciplinary Report and Hearing Record*, Case #20060098554). Samford was also reportedly convicted of violating prison disciplinary rules in case #20060102255 by attempting to establish an inappropriate relationship with Officer Torres.[4] As punishment for these convictions, Samford lost recreational and commissary privileges and he was assigned to perform extra duty. He was placed in solitary confinement for a limited time, reduced in classification status, and he also forfeited previously earned good-time credit. Samford complains that both disciplinary cases were obtained in violation of his right to due process.

In the disciplinary hearing context a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Importantly, prisoners charged with institutional

---

[4]     Samford has not submitted a copy of the TDCJ Disciplinary Report and Hearing Record for disciplinary case #20060102255.

rules violations are entitled to rights under the Due Process Clause *only* when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Liberty interests emanate from either the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Liberty interests arising from state law are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted). Only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Id*. at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996). As discussed below, none of the sanctions imposed in the cases that Samford challenges affect the duration of his sentence or a constitutionally protected liberty interest.

### 1. Loss of Privileges, Extra Duty, Solitary Confinement, and Reduced Classification Status

As a result of the disciplinary convictions at issue, Samford's recreation and commissary privileges were curtailed, he was assigned to perform extra duty, he was placed in solitary confinement on a temporary basis, and his classification status was reduced. According to well-settled precedent, sanctions that are "merely changes in the conditions of

[an inmate's] confinement" do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Limitations imposed upon commissary or recreational privileges, extra work assignments, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *See id*. The Fifth Circuit has also decided that reductions in a prisoner's class status and the potential impact on good-time credit earning ability are not protected by the Due Process Clause. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996). Because a protected liberty interest is not implicated by these sanctions, Samford cannot show that the punishment was imposed in violation of his right to due process.

### 2. Claims Concerning Lost Good-Time Credits

As a result of the challenged disciplinary convictions, prison officials also revoked good-time credit previously earned by Samford. A challenge to the loss of good-time credits generally requires a separate analysis. *See Madison*, 104 F.3d at 768. As Samford points out, however, the loss of good-time credit will have no effect on his sentence because he is not eligible for early release on mandatory supervision. This is fatal to his due process claim.

Because Samford is not eligible for mandatory supervision, any good-time credits he

has earned apply only toward his eligibility for parole.[5] It is well established that there is no protected liberty interest in obtaining parole in Texas. *See Madison*, 104 F.3d at 768-69; *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995); *Gilbertson v. Texas Bd. of Pardons and Paroles*, 993 F.2d 74, 75 (5th Cir. 1993). In other words, because Samford has no constitutional right to parole, and he is not eligible for release on mandatory supervision, his good-time credit sanction does not affect the length or duration of his confinement and does not implicate a liberty interest of the sort protected by the Due Process Clause. *See Madison*, 104 F.3d at 768-69. Accordingly, Samford cannot demonstrate a violation of the Due Process Clause in connection with this sanction. *See id.*; *see also Sandin*, 515 U.S. at 487.

In summary, because the sanctions assessed against Samford do not implicate a protected liberty interest, any claim by him concerning his disciplinary conviction fails to establish the requisite constitutional violation as a matter of law. Accordingly, he fails to state a claim for which relief can be granted under 42 U.S.C. § 1983.

### E. Supervisory Liability

In addition, a review of the complaint and more definite statement shows that Samford fails to establish the requisite personal involvement on the part of former Director Dretke and Senior Warden Merchant. The pleadings, as supplemented, do not establish facts showing that these defendants had any personal involvement in the episode that forms the basis of the

---

[5] Texas law provides that good-time credits apply only to eligibility for release on parole or mandatory supervision and do not affect the length of an inmate's sentence. *See* TEX. GOV'T CODE ANN. § 498.003; *Ex parte Montgomery*, 894 S.W.2d 324, 328 (Tex. Crim. App. 1995).

complaint. Instead, it appears that these defendants have been named in their capacity as supervisory officials.

A supervisor may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). Supervisory officials can only be held liable if the plaintiff demonstrates that either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Supervisory liability exists without overt personal participation in an offensive act only if supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins*, 828 F.2d at 304 (quotations omitted).

It appears from the pleadings that Samford names former Director Dretke and Senior Warden Merchant simply because they had authority to uphold decisions about grievances filed by inmates in TDCJ. Samford fails to allege sufficient facts, however, showing that any of these defendants had personal involvement with his claims or that there was any causal connection between a particular prison policy and the alleged wrongful conduct. Conclusory allegations or generalized assertions are not sufficient to state a claim; particular facts are

17

required to specify the personal involvement of each defendant. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Fee v. Herndon*, 900 F.2d 804 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990). Therefore, the Court concludes that his complaint against former Director Dretke and Senior Warden Merchant lacks an arguable basis in law and that it is subject to dismissal for this reason.

IV.    **CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** as follows:

1. The plaintiff's complaint is **DISMISSED** with prejudice, under 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim.

**The Clerk is directed to provide copies of this order to the parties; to the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; to the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas, 77342-0629, Fax Number (936) 437-4793; and to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Betty Parker.**

SIGNED at Houston, Texas, on **July 21, 2006.**

Nancy F. Atlas
United States District Judge